Filed 11/29/23  Marriage of Hiramanek CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Santa Clara)

----

| | |
|---|---|
| In re the Marriage of KAMAL and ADIL HIRAMANEK. | C088669/C088712 |
| KAMAL HIRAMANEK, | (Super. Ct. No. 2009-1-FL-149682) |
| Respondent, | |
| v. | |
| ADIL HIRAMANEK, as Personal Representative, etc., | |
| Appellant. | |

This case and others involving Adil Hiramanek and his family members were originally filed in Santa Clara County Superior Court.  Following initial proceedings in the Sixth Appellate District, various appeals, including these two, were transferred to this district.  We will refer to the Hiramanek family members by their first names for clarity.  Adil was designated a vexatious litigant subject to a prefiling order under Code of Civil Procedure section 391.7.  (See *In re Marriage of Hiramanek* (Aug. 23, 2012, H035887) [nonpub. opn.].)[1]

---

[1] On the court's own motion, we take judicial notice of this opinion resulting from an appeal that originated from the same superior court action as this appeal.  (Evid. Code, § 452, subd. (d).)

1

These appeals arise from a marital dissolution action between wife Kamal and husband Adil in the Santa Clara County Superior Court. Roda, now deceased, was Adil's mother. She was joined as a party in the dissolution action through a complaint in intervention.

Roda filed two notices of appeal, and Adil, acting without counsel, is maintaining those appeals as the personal representative of Roda's estate (the Estate). This court consolidated the two appeals on its own motion; they will be considered together but retain their own case numbers. Although Adil also appealed on his own behalf, we dismissed Adil's appeals because he lacked standing.

Adil and Kamal married in 1998. Kamal filed a petition for dissolution in 2007, but they reconciled in 2008. As part of the reconciliation and dismissal of the dissolution action, Adil and Kamal entered into an agreement that was adopted as an order of the family court in July 2008. Later, in the dissolution action, the family court rejected Roda's effort to set aside the 2008 agreement (denying the relief she requested in her complaint in intervention), an order that was affirmed by this court. (*In re Marriage of Hiramanek* (Apr. 17, 2019, C082930) [nonpub. opn.].) However, Roda subsequently asked the family court to declare that she was not bound by the agreement. The family court denied the request, ruling that the request was untimely and that the validity of the agreement had already been determined when the family court denied the relief requested in Roda's complaint in intervention. In appeal No. C088669, the Estate contends the trial court erred in determining that Roda could not relitigate the validity of the agreement.

Soon after her request in the trial court for a declaration that she was not bound by the agreement, Roda sought to enforce the agreement (claiming Kamal interfered with Roda's grandparent visitation under the agreement) or, in the alternative, to rescind the agreement. The trial court denied the request, finding that the agreement did not affirmatively grant Roda a right to visitation and that Kamal had not violated the agreement. Roda also sought to strike or vacate a restraining order against Adil and in

2

favor of Kamal and the children. The trial court denied that request as well, concluding Roda lacked standing to challenge the restraining order. In appeal No. C088712, the Estate contends the trial court erred in denying Roda's requests to enforce or rescind the agreement and to strike or vacate the restraining order.

Finding no merit in the Estate's contentions on appeal, we will affirm the challenged orders.

BACKGROUND

Roda previously appealed in this dissolution case. (*In re Marriage of Hiramanek, supra*, C082930.) We derive the background from the opinion in that appeal.

Adil and Kamal married in 1998, and Kamal filed a petition for dissolution in 2007. Because Roda was involved in finances related to the marriage, the trial court froze several of her accounts.

On July 10, 2008, Roda, Adil, and Kamal signed an agreement leading to a reconciliation of the marriage. Under the agreement, Kamal agreed to dismiss the dissolution action. Roda agreed to relinquish any claims she had on the family residence, leaving Adil and Kamal as the owners of the property. However, the agreement provided, among other things, that Roda could visit or reside at the residence if Adil so desired. In exchange for Roda's relinquishment of an interest in the family residence, Kamal agreed to relinquish any claim she had to Roda's assets in specified accounts.

At a hearing to make the agreement an order of the court, the family court asked Adil to translate for Roda, whose native language is Gujarati. The family court conducted a voir dire examination concerning the agreement. From the parties' answers, the family court determined that the initials and signatures on the agreement were genuine and that it was signed freely and voluntarily. The family court adopted the agreement as a court order in the dissolution action.

Based on the agreement, the family court dismissed the dissolution action. However, on March 6, 2009, eight months after signing the agreement, Kamal filed a

3

second petition for dissolution. Adil attempted to have the agreement set aside in the second dissolution action, but the family court denied his motion. Kamal continued to reside at the residence and Adil was ordered to stay away.

Roda filed a civil complaint against Kamal and Kamal's mother, Perviz Kapadia, seeking to set aside the agreement. The superior court sustained a demurrer to the complaint, ruling that because the agreement became an order of the dissolution action, the appropriate forum was the family court. The family court subsequently granted Roda's request for joinder in the dissolution action.

On August 1, 2011, Roda filed in the dissolution action a first amended complaint in intervention, the operative pleading relevant to this appeal. She requested equitable relief, declaratory relief, rescission and damages for breach of contract, and rescission and damages for deceit. Roda requested a declaration that she is the "100% equitable owner" of the residence.

Adil answered the complaint, stating that although he did not admit all the allegations, he did not contest Roda's requests for relief. Kamal also answered the complaint, denying most of the substantive allegations.

The family court took evidence, issued a tentative statement of decision, heard argument, and ultimately issued a final statement of decision denying Roda's requested relief. The family court determined Roda's complaint in intervention was the proper method to seek rescission of the agreement, Roda was not entitled to a jury trial because the agreement had been reduced to a court order, and the family court had inherent authority to determine whether Roda was entitled to rescind the agreement.

The family court also made the following factual findings relating to Roda's requests for relief:

1. Kamal and Kamal's mother did not pressure Roda to sign the agreement.

2. Roda's free will was not overcome by any specific wrongful act or threat.

4

3. Roda's shifting statements regarding whether she read the agreement before signing it rendered her testimony not credible.

4. Roda's claims that she did not understand English also were not credible. According to the family court, Roda testified without the help of an interpreter at trial, she had a strong command of the English language, and she was able to testify thoroughly and competently.

5. Roda not only signed the agreement but also acknowledged her agreement to it in open court.

6. Kamal took good-faith steps to reconcile with Adil after signing the agreement.

7. Kamal intended to comply with the agreement when she signed it.

8. Kamal filed the second petition for dissolution because she perceived that Adil's behavior was abusive.

9. The prospect of another dissolution proceeding was not unforeseeable when the agreement was signed.

10. Roda had the capacity to enter into the agreement.

11. Roda did not sign the agreement under duress, by mistake, or because of undue influence.

12. Roda received consideration for her relinquishment of any and all claims on the residence.

13. Adil and Kamal did not fail to perform under the agreement.

14. There was no deceit, misrepresentation, fraud, or fraudulent concealment of facts by any party in signing the agreement.

In addition, the family court made the following legal determinations:

1. Although the agreement authorized Roda to visit or reside at the residence if Adil desired, and there was no longer such an opportunity in light of the dissolution, the equities nevertheless did not support rescission of the agreement.

5

2. Applying principles of contract interpretation and considering the mutual intention of the parties, the agreement did not give Roda the right to visit or reside at the residence in the event of dissolution of the marriage.

3. The agreement did not give Roda a property right in the residence. It authorized Roda to visit or reside at the residence if Adil desired, but only if the couple lived together as a family.

4. By signing the agreement, Roda relinquished any and all claims she may have had to the residence.

Based on those findings and legal determinations, the family court denied equitable relief, declaratory relief, remedies for breach of contract, and remedies for deceit. (*In re Marriage of Hiramanek, supra*, C082930.)

DISCUSSION

I

In appeal No. C088669, the Estate contends the trial court erred in determining that Roda could not relitigate the validity of the agreement.

" 'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' [Citation.]" (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.)

The issue of the validity of the agreement was litigated to finality and hence relitigation is barred by collateral estoppel. Although the family court referenced res judicata, it is more appropriately referenced as collateral estoppel due to the preclusive effect of the prior final determination on the issue of validity. An issue previously decided to finality establishes collateral estoppel even if some factual matters or legal theories that could have been presented with respect to that issue were not presented.

6

(*Bridgeford v. Pacific Health Corp.* (2012) 202 Cal.App.4th 1034, 1042-1043 (*Bridgeford*).)

The Estate argues the agreement is invalid because Roda could not adequately understand the proceedings when the family court adopted it. However, in the 2012 proceedings leading up to the appeal in case No. C082930, the family court made factual findings inconsistent with the Estate's argument. And Roda had the opportunity to raise any other claims concerning the validity of the agreement in the proceedings leading up to the appeal in case No. C082930. Because Roda had such an opportunity and the issue of validity was litigated to finality (this court affirming the family court's 2012 order), the Estate cannot relitigate the issue. (*Bridgeford, supra*, 202 Cal.App.4th at pp. 1042-1043.)

The Estate argues relitigation is not barred because there was no valid agreement to begin with and no valid consent. But such an argument is circular, as it is merely an attempt to relitigate the validity of the agreement, which the Estate cannot do. Prior final litigation determined the validity of the agreement and the Estate cannot now seek to establish otherwise.

The Estate claims res judicata does not apply to void judgments, citing *Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1239, which held that res judicata does not attach to a judgment that is void for lack of personal or subject matter jurisdiction where it was obtained through extrinsic fraud. Here, however, there was no lack of personal or subject matter jurisdiction in the dissolution action and the family court found there was no fraud.

The Estate's attempt to relitigate the agreement is barred by collateral estoppel. Accordingly, we need not address the Estate's remaining contentions in appeal No. C088669.

7

II

In appeal No. C088712, the Estate contends the trial court erred in denying Roda's requests to enforce or rescind the agreement and to strike or vacate the restraining order.

Roda's request to enforce the agreement was based on her assertion that she was entitled to grandparent visitation. This was based on the portion of the 2008 agreement providing that Roda could visit or reside at the family residence if Adil so desired. The issue of Roda's entitlement to visit or reside at the residence was raised and fully litigated to finality in case No. C082930 with the determination that the agreement did not give Roda the right to visit or reside at the residence after the marriage was dissolved. (*In re Marriage of Hiramanek, supra*, C082930.) The Estate cannot relitigate the issue of Roda's entitlement to visit or reside in the family residence. (*Bridgeford, supra*, 202 Cal.App.4th at pp. 1042-1043.) In any event, the family court found that the agreement did not entitle Roda to grandparent visits, and the family court's determination is supported by the record.

The Estate nevertheless argues the agreement must be enforced because Kamal's post-agreement actions prevented Roda from exercising her grandparent visitation rights. But now that Roda is deceased, the issue of her visitation is moot because no effectual relief can be given to restore to Roda the visitation rights the Estate claims were inhibited. (See *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1574 (*Wilson & Wilson*) [issue moot when no effectual relief can be granted].)

As for Roda's alternative request to rescind the agreement, we have already explained that the attempt to relitigate the validity of the agreement is barred by collateral estoppel.

Regarding Roda's request to strike or vacate the restraining order, she argued the restraining order against Adil inhibited her visitation rights with her grandchildren. The family court determined Roda did not have standing to challenge the restraining

8

order.  Even if we were to assume that Roda had proper standing at the time she made her request, grandparent visitation cannot now be a basis to strike or vacate the restraining order because Roda is deceased.  (*Wilson & Wilson, supra*, 191 Cal.App.4th at p. 1574.)

DISPOSITION

The orders appealed from in case Nos. C088669 and C088712 are affirmed. The parties will bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


/S/
MAURO, Acting P. J.

We concur:


/S/
DUARTE, J.


/S/
BOULWARE EURIE, J.

9